MATTER OF M/S *PANAGHIA THEOSKEPASTI*

In FINE Proceedings

NYC-10/52.489

*Decided by Board August 23, 1963*

(1) Liability to fine as to an alien crewman inspected and denied landing privileges, as to whom permission was later granted the agent to take him ashore for medical treatment conditioned upon his being under guard at all times and returned to the vessel but who eluded his guard and is still at large, properly lies under subsection (a) (3) of section 254, Immigration and Nationality Act.

(2) Proceedings under section 254(a) (3) of the Act require personal service of notice to deport on the party charged with liability to fine.

IN RE: M/S *Panaghia Theoskepasti,* which arrived at the port of New York from foreign on February 8, 1963. Alien crewman involved: Aristidis Muskatas.

BASIS FOR FINE: Act of 1952—Section 254 (8 U.S.C. 1284).

The District Director at New York has ordered an administrative penalty of $600, $1,000 mitigated to the extent of $400, imposed upon the vessel's agents. Said official predicates his action on a Notice of Intention to Fine (Form I-79) stating that the section of the law involved is 254 of the Immigration and Nationality Act (8 U.S.C. 1284). He charges a violation thereof, in the following language:

. . . failure to detain on board the vessel at all times an alien crewman (Aristidis Mustakas) who had not been granted a conditional permit to land temporarily in the United States.

It appears upon the record before us that the following material facts exist without substantial controversy. Aristidis Mustakas, a native and national of Greece, was serving as a crewman aboard this ship at the time of its above-described arrival in the United States. Immigration inspection, which was then accorded its crew members, resulted in the refusal of conditional landing privileges to him. Under the statute, therefore, the vessel's agents, *inter alia,* had the absolute duty of detaining him on board the ship and deporting him from the United States thereon. However, the Service later gave the agents permission to take the crewman ashore for medical treat-

ment, on condition that he be kept under guard at all times and returned aboard the vessel. The ship's second officer was assigned the task of accompanying the crewman to the doctor and bringing him back to the ship, but the latter eluded his guard en route to the doctor's office. Insofar as the record shows, he is still at large in this country.

As to crewmen arriving aboard vessels in United States ports, section 254(a) of the Immigration and Nationality Act (8 U.S.C. 1284) imposes three separate and distinct, though closely related, duties which the parties named in the statute, including the vessel's agents, are charged with the responsibility of meeting. ·Failure to perform these duties subjects those parties, agents included, to the penalty specified in the statute.

Subsection (1) requires crewmen to be detained on board an arriving vessel until an immigration officer has completely inspected them. It does so without the necessity of individual notice. The reason is that the law itself, without more, serves as notice.

Subsection (2) provides that crewmen must be detained on board after inspection, unless and until they are issued landing permits. Again, there is no requirement of individual notice. The reason, likewise, is that the statute itself serves as notice to continue the detention until such time as an immigration officer lifts it by issuing a conditional landing permit, or otherwise. When and if that is done, the terms of the permit and/or the other conditions attached to the crewman's landing constitute full notice to all, agents included, of the limitations placed thereon. While the permit or other authorization may not be furnished the agents, the statute makes them responsible nevertheless.

Subsection (3) necessitates the deportation of crewmen, either before or after they are permitted to land temporarily, if such action is required. This provision of the statute is the logical result sought to be accomplished by subsections (1) and (2) thereof, to the end that the intent of the Congress in enacting this legislation, to wit: the close control of crewmen and the prevention of aliens from using the seaman's route to gain easy access to this country, might be effectuated.

Clearly, as to a crewman required by the statute to be detained on board until inspection and not thereafter granted a conditional landing permit by the examining immigration officer, then, as in cases of subsections (1) and (2) the law itself, without more, serves as notice to deport. To hold otherwise would be to reach an absurd result. But if the requirement of deportation is imposed after the crewman has been granted a conditional landing permit and his detention lifted, then notice of a personal nature is essential. (*Matter of SS "Marilena,"* 7 I. & N. Dec. 453; *Matter of M/V "Arnfinn Stange,"* 8 I. & N. Dec. 639.)

361

In the unreported case of the SS. "Atlantic Unity," (PHI-10/99.161), decided by this Board on July 9, 1959, we were confronted with a situation substantially similar to the one now before us for consideration. Therein, the boarding immigration officer refused conditional landing privileges to an alien crewman, but the Service later consented to his removal from the ship for hospitalization. Such consent was given upon the responsible parties agreeing in writing to the following conditions: that upon release from the hospital, the crewman would be promptly removed from the United States without expense to the Government; that he would be under guard after his release from the hospital until his deportation; and that the foregoing arrangements would not relieve the responsible parties from liability to fine proceedings and deportation costs if the crewman failed to so depart from the United States. These conditions were not met and the crewman gained his enlargement in the United States, although he was eventually taken into custody by Service officers.

The proceedings in the foregoing case were based on a charge of "failure to deport" in violation of section 254(a)(3) of the Immigration and Nationality Act. We upheld the fine imposed by the District Director therein, thus indicating the appropriate provision of the statute to be relied on in substantially similar situations when there has been a "failure to detain and deport." In this instance, however, section 254(a)(3) was not used. Therefore, the appeal will be sustained.

ORDER: It is ordered that the appeal be and the same is hereby sustained.